**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| MALIBU MEDIA, LLC,<br><br>         Plaintiff,<br><br>v.<br><br>MOHAMAD BAIAZID,<br><br>         Defendant. | **CASE NO.: 1:14-cv-01178-TSE-TRJ** |

**PLAINTIFF'S MOTION TO DISMISS**

Plaintiff moves for the entry of an order dismissing this case on the condition that each party pays its own fees and costs and submits the following memorandum in support.

**I.**     **INTRODUCTION**

Defendant is attempting to perpetuate a fraud on the Court through perjury and the suppression or spoliation of evidence.  In furtherance thereof, Defendant is conspiring with a person who claims to be Salima Abedou Khateeb ("Salima").  Salima purportedly lives in Turkey and states he *may* have committed the infringement.  *See* Affidavit of Salima, attached hereto as Exhibit "A."  But, Salima refuses to properly identify himself.  Nor will he provide Plaintiff with his computer which, by the way, Defendant gave to him.  Salima's recent decision not to produce the computer contradicts Defendant's prior assurances to the contrary.  And, it changes the landscape of this litigation.  As explained below, Defendant and Salima's story has all the hallmarks of perjury and fraud.

Knowing that where there is smoke there is fire, Plaintiff offered to pay Defendant's attorneys' fees if he passed a lie detector test.  Significantly, Plaintiff did not demand the polygraph evidence be admissible, or that Defendant pay Plaintiff if he failed, or that if he failed,

Defendant must take a walk away.   In short, Defendant had _no_ downside.   Nevertheless, Defendant refused.  His consciousness of guilt is obvious.  *See* Email Correspondence, attached hereto as Exhibit "B," at email dated July 30, 2015.   Doubling down on moral turpitude, Defendant is now demanding Plaintiff pay him.  Of course, the Copyright Act gives courts discretion to award fees to the prevailing party.  But, here, out of principal and good conscience – absent a final judgment compelling it to do so – Plaintiff would *never-ever* pay Defendant because Plaintiff sincerely believes he is a thief, perjurer and spoliator of evidence.  Instead, if the case proceeds, Plaintiff would seek a continuance so that it may retain counsel in Turkey and compel Salima to turn over his computer for imagining.  While the evidence of fraud is already substantial, without the computer, Plaintiff lacks the irrefutable proof which would conclusively establish the conspirators' perjury and fraud.  Thus, Plaintiff is at an unfair disadvantage.

Going to Turkey and spending scores of thousands of dollars on discovery and then trial preparation is not economically justified.  Defendant will never be able to pay for his tort nor the attorneys' fees Plaintiff would be required to incur.  Fortunately, this Court can arrest Plaintiff's injury by simply dismissing this case in such a way that denies Defendant fees.  Doing so is just and proper because (1) Defendant has not expended significant effort and expense, (2) Plaintiff has been diligent, (3) Plaintiff has a valid reason for dismissal—namely that litigation is not cost effective or practical, and (4) Defendant has not filed a Motion for Summary Judgment.  Moreover, Defendant is committing a fraud.  And, he has not prevailed in this matter.  Nor would he likely do so.  He is the infringer.  Obviously, rewarding a thief, perjurer and fraudster does not serve any legitimate purpose.

For these reasons, as set forth below, Plaintiff respectfully requests the Court dismiss this case with each party paying its own attorneys' fees and costs.

## II.   FACTUAL BACKGROUND

On a regular basis from May 7, 2014 to July 14, 2014 (the "Period of Recorded Infringement"), Excipio recorded someone using Defendant's internet send its servers pieces of copies of Plaintiff's movies via BitTorrent, in violation of Plaintiff's copyrights. *See* Amended Complaint [CM/ECF 9], at ¶ 22, and Exhibit B attached thereto [CM/ECF 8-1].   Defendant's internet was password protected; therefore, the infringer must be either Defendant or someone in his home. *See* Deposition of Defendant, attached hereto as Exhibit "C," at 16:11-13.   There is no evidence of a WiFi hacker.   Knowing this, Defendant fabricated a resident infringer.   Toward that end, he recruited Salima.   Defendant claims Salima visited him and his wife, and stayed at their one bedroom apartment from May 4, 2014 to August 3, 2014. *See* Exhibit B, at April 17, 2015 email.   Salima states he used BitTorrent while visiting Defendant. *See* Exhibit A.   As for Defendant, he claims not to own a computer and to have never used BitTorrent.   Significantly, their story was hatched *after* Defendant learned the time frame of the Period of Recorded Infringement.

Despite repeated requests throughout discovery, Defendant only provided Salima's contact information on August 5, 2015. *See* Exhibit C, at 10:13-21.   At Salima's deposition on August 6, 2015, Plaintiff learned Salima possesses and is using *Defendant's* former computer. *See* Deposition of Salima Abedou Khateeb, attached hereto as Exhibit "D," at 53:15-16. Critically, while Defendant was urging Plaintiff to drop the case, he offered to allow Plaintiff to examine Salima's computer. *See* Exhibit B, at July 16, 2015, July 17, 2015, and June 10, 2015. Plaintiff relied on that assurance.   Indeed, Plaintiff knows Defendant is the infringer and therefore Salima's computer will *not* have evidence of BitTorrent downloads of Plaintiff's movies.   Unfortunately, when asked during his recent deposition, Salima refused to produce his

computer. Exhibit D, at 54:11-21; 55: 1-14.  When pushed, Salima said he needed a week to think about it.  *Id*.  After consideration, he must have decided not to produce it.  Plaintiff has not heard from Salima, and discovery closed during his contemplation period.  *Id*.  The flip-flops continue.  Initially, Defendant claimed Salima *admitted* being the infringer.  Not true.  Salima merely swore he used BitTorrent and <u>may</u> be the infringer.  *See* Exhibit A.

The "may have" statement is almost certainly false, however.  First, Salima does not recall Plaintiff's works:  Q. "[s]o you can't actually remember whether you encountered these film titles at all? A. Not at all."  Exhibit D at p. 76:8-1.  Additionally, Salima's "may have" testimony is inconsistent with the evidence.  To explain, in addition to Plaintiff's works, Excipio recorded the titles of third-party works that were downloaded via BitTorrent by someone using Defendant's internet and the times associated with those transactions (the "Additional Evidence").  The Additional Evidence shows BitTorrent use from February 9, 2014 to October 23, 2014.  *See* Additional Evidence, attached hereto as Exhibit "E."  Salima's putative visit did not last this long.  Therefore, his putative visit cannot account for the BitTorrent use emanating from Defendant's apartment.  Significantly, the Additional Evidence was not produced until mid-June, i.e., after Defendant had defined the boundaries of Salima's putative visit.  Consequently, Defendant failed to fabricate a longer visit.  Further, the work, X-Art - Eve, Ivy - Thunderstorm Love NEW (XART August 13, 2014) NEW.mp4, was downloaded on September 8, 2014—*after Salima returned to Turkey*.  This infringement occurred on the date Plaintiff filed the instant suit.  Therefore, Defendant did not take it into account when concocting the Salima story.

Make no mistake, Salima is not trying to do the right thing; he is trying to help his friend, Defendant.  Indeed, Salima freely admits he only sat for a deposition because he believes Plaintiff will not pursue him in Turkey.  *See* Exhibit D, at p. 10:19-21; 11:1-5.  The whole story

4

surrounding Salima's putative visit is illogical.  To explain, Salima claims he came to America for tourism and to learn English; yet he is fluent in English, and he did not leave Defendant's Washington, DC suburb to visit the Capital.  *Id.* at p. 24: 19-21; 25:1-4; 26:5-13; 6:21; 7:1. Salima claims to have no bank accounts and instead to have only used cash for the three months he was in the U.S.  *Id.* at p. 11:20-21; 27:15.  Further, Salima refuses to produce a government issued identification card.  *Id.* at p. 5:1-5.  Accordingly, Plaintiff has no way of knowing who Salima is or if he really came to the U.S.  Moreover, Plaintiff cannot find Salima's putative address on the Internet.  In short, there is no non-testimonial evidence corroborating Salima's purported three month long visit except what appears to be a recently created word document. *See* Plane Ticket, attached hereto as Exhibit "F."  Salima claims the word document is a plane ticket. *See* Exhibit D at 83: 5-7.  But, it does not look like a plane ticket – not at all.  *See* Ex. A.

Further, Salima knows very little about Defendant's home.  For example, Salima could not answer *simple* questions about Defendant's one bedroom apartment, e.g., "does it have a dishwasher." *Id.* at p. 26:18-21; 28:18-21; 29:1-2.  As for Defendant, despite claiming to have known Salima for "[a] long time," Defendant does not know him like a roommate would.  *See* Exhibit C, at p. 106:21.  By way of example only, Defendant cannot recall when or where he met Salima, where or if Salima went to school, if Salima is left or right handed, what Salima likes to eat or if he traveled.  *Id.* at 109:4-6; 9-11; 18-20; 110:3-5; 111:10-16; 112:4-7.

Significantly, Defendant and Salima's story was reported to Plaintiff *after* Defendant learned the time frame of recorded infringement that Plaintiff *first* reported to him.  With remarkable coincidence, Salima's visit just happened to correlate to what was reported. However, as stated above, Plaintiff's Additional Evidence and one of the infringements of Plaintiff's works prove that someone other than Salima *was* using Defendant's internet for

BitTorrent.   Since Defendant's WiFi router was password protected and the BitTorrent use occurred over a substantial period of time, that person must have been a resident in Defendant's home.   Accordingly, that person must have had a computer device capable of using BitTorrent. But, Defendant has neither identified nor produced any such computer device.   Instead, he hangs his hat on the laughable assertion that he does not own one.

More  evidence  points  to  Defendant  as  the  infringer.   To explain,  Defendant  is  a filmmaker  and  the  Additional  Evidence  includes  e-books  about  filmmaking  as  well  as  film editing software.   *See* Exhibit E.   Specifically, Plaintiff's Additional Evidence includes: "Red Giant Magic Bullet Suite 11.4.2 (32 - 64 bit) [ChingLiu]," a video editing software and "Adobe Premiere  Pro  CC  7.2.1  Multilanguage  [ChingLiu]"  –  the  *exact same* software  used  to  edit Defendant's films.   *See* Exhibit C, at p. 73:1-7 ("Q. Do you know what sort of programming or software would be used in the process of editing your films?  A. Yeah . . . Adobe Premier.").

Plaintiff's  evidence  also  includes  e-books  about  filmmaking—both  of  which  were downloaded well before Salima came to the U.S.   Specifically: "Story - Robert Mckee" and "Film Directing Shot by Shot, Visualizing from Concept to Screen - Steven D. Katz.pdf" – *a book Defendant admits owning*.   *See* Exhibit C, at p. 137:18-21.   ("Q. Have you ever heard of a book called Film Directing Shot By Shot, Visualizing From Concept to Screen?  A. I have it.").

Additionally, Defendant admitted that he saw several of the movies and TV shows on the Additional Evidence.   When asked if he ever heard of the show "How I Met Your Mother," Defendant responded, "Sure I watched the whole thing." *Id*. at p. 65:18-20.   The Additional Evidence includes:

| IP Address | File Name | Date[1] |
|---|---|---|
| 96.231.40.175 | How.I.Met.Your.Mother.S09E16.HDTV.X264-ChameE | **4/1/14** |
| 96.231.40.175 | How.I.Met.Your.Mother.S09E17.HDTV.X264-ChameE | **4/1/14** |

Defendant also admitted viewing the films "Thor," "Amazing Spider Man," "In Time,"
and "Memento," and may have seen "Rio 2." *See* Exhibit C at p. 154:1-3; 13:15-17; 152:17-19;
150: 19-21; 33:16-21; 34:1-14.  Plaintiff's Additional Evidence includes:

| IP Address | File Name | Date |
|---|---|---|
| 96.231.40.175 | Thor 2011 R5LiNe XviD Limited PuRsuE | **9/10/14** |
| 96.231.40.175 | The Amazing Spider-Man (2012) DVD Rip - 1st On Net | 5/31/14 |
| 96.231.40.175 | In Time (2011) [1080p] | **8/21/14-8/22/14** |
| 96.231.40.175 | Memento (2000) | 7/24/14 |
| 96.231.40.175 | Rio 2 (2014) | 6/12/14 |

Defendant also owns a Blu-Ray player and an Android phone. *See* Exhibit C, at 20:8-14;
52:16-21.  Plaintiff's Additional Evidence includes Blu-Ray conversion software and cheats to a
game played on Android devices:

| IP Address | File Name | Date |
|---|---|---|
| 96.231.40.175 | vsoBlurayToAVI | **3/28/14** |
| 96.231.40.175 | Terraria v1.04 [full] + CHEATS Android apk | 5/31/14 |

Based on the foregoing, Plaintiff's evidence implicates Defendant as the infringer—not
Salima.

---

[1] The dates in bold are outside the time frame of Salima's stay, and therefore, could not have been
downloaded by Salima.

Further, after more than eight months of regular and consistent BitTorrent infringement, the infringement stopped _exactly_ when Defendant would have received notice from Verizon in October of 2014. Damningly for Defendant, _only_ Defendant and his wife resided at his apartment during the _entire_ period of BitTorrent activity. _See id_. at p. 8: 3-5. And, even more damningly, the BitTorrent downloads stopped during the _exact_ time period Defendant and his wife were out of town—in late June to early July 2014. _See_ Social Media Screen Shots, attached hereto as Exhibit "G." Indeed, if Salima was downloading torrents "all the time" as he claims, the BitTorrent activity _should not have stopped_ while Defendant and his wife were visiting California—leaving Salima alone in their apartment with a laptop. _See_ Exhibit D, at p. 56:2-10.

In addition to all the foregoing, Defendant has lied, under oath, about the extent of his home computer use. To explain, throughout this case, Defendant repeatedly denied using or accessing a computer in his apartment. Plaintiff knows this must be false because of the above correlations. Further, it is simply impossible to believe that a filmmaker can perform his job without a home computer. As for the perjury, as part of Plaintiff's First Set of Interrogatories, Plaintiff asked Defendant to identify _all_ of the computer devices that were used in his home during the previous _two years_. In response, Defendant listed only four (4) devices: a Nexus 4 cellphone, a Nexus 5 cellphone, an Apple iPad Mini, and an Apple iPad 2. No other devices were identified. _See_ Interrogatories, attached hereto as Exhibit "H," at No 4. Indeed, even the laptop that Salima supposedly used was not even listed. In his deposition, Defendant testified:

> Q: So are you asserting again that any time you might have been connected to the Internet, it would have had to have been on either your tablet or your phone or your wife's tablet or phone?
>
> A: Inside the apartment, yes.

Exhibit "C," at p. 39:7-19.  This is 100% provably false.  Unfortunately for Defendant, Plaintiff found a picture of Defendant *using a computer in his apartment*.  *See* Exhibit C, at p. 61: 8-21; 62:1-2; *see also* Photo of Defendant, attached hereto as Exhibit "I."  So, after allowing Defendant to perjure himself during his deposition, Plaintiff confronted him with the picture. Defendant's – oh, I forgot – retraction was painful to watch and clearly contrived.  Defendant's wife's testimony also proves Defendant's testimony was false.  Indeed, she testified that she had used a computer in their apartment during the applicable time period.  *See* Deposition of Samah Abedalnabialisafi, attached hereto at Exhibit "J," at p. 81:8-13.  Significantly, none of the computers used in Defendant's home were identified or produced.  The failure to obtain the evidence in this case, including Salima's computer, places Plaintiff at an unfair disadvantage. So, to proceed, more discovery and work is required.

III.     **ARGUMENT**

     **A. This Case Should Be Dismissed Because Defendant Will Not Be Unfairly Prejudiced**

"The purpose of Rule 41(a)(2) is freely to allow voluntary dismissals unless the parties will be unfairly prejudiced." *Davis v. USX Corp.*, 819 F.2d 1270, 1273 (4th Cir. 1987) (finding district court abused its discretion by denying motion for voluntary dismissal without prejudice because plaintiff refused to pay part of defendant's attorney fees as condition of dismissal).  A Rule 41(a)(2) motion is typically "granted unless there is 'substantial prejudice' or 'plain legal prejudice' to the defendant." *Dodson v. DHI Mortgage Co.*, 2007 WL 4268903, at *1 (E.D. Va. 2007).  The Fourth Circuit considers four factors when determining the question of prejudice: "(1) the opposing party's effort and expense in preparing for trial; (2) excessive delay or lack of diligence on the part of the movant; (3) insufficient explanation of the need for a dismissal; and (4) the present stage of the litigation, *i.e.,* whether a motion for summary judgment is pending."

9

*Gross v. Spies*, 133 F.3d 914 (4th Cir. 1998); *see also Dodson v. DHI Mortgage Co.*, 2007 WL 4268903, at \*2 (E.D. Va. 2007) (same).

Here, all four factors weigh in favor of dismissal.

### 1. Defendant Has Not Expended Significant Effort And Expense

The first factor weighs against Defendant because discovery in this case has been limited. There have only been three depositions, no expert examinations, and very limited paper discovery. Further, there has not been any substantial motion work. To the contrary, the only truly substantive motion so far filed was by Defendant, a motion to compel. *See* CM/ECF 43. First, this could not have been terribly difficult for Defendant's counsel to write because he asserts most of the same arguments in the numerous other Malibu cases he is defending. Second, Plaintiff properly objected to that discovery. And, the discovery dispute will almost certainly get resolved in one of opposing counsel's other Malibu cases. There is no prejudice, and legally, when, as here, "[Defendant] has incurred legal fees . . . designed to impede the ability of Plaintiffs to prosecute this action in an efficient manner," any such fees do not weigh against permitting dismissal. *Priority Records L.L.C. v. Chan*, 2005 WL 2277107, at \*2 (E.D. Mich. 2005).

### 2. Plaintiff Has Not Significantly Delayed Nor Exercised Lack of Diligence

Plaintiff acted diligently throughout this litigation and did not cause any significant delays. Further, upon learning about the "Salima" story, Plaintiff shifted its efforts toward ascertaining the truth or falsity thereof. Significantly, Plaintiff only learned Salima will *not* produce the relevant computer during his deposition on August 6, 2015. And, Plaintiff only received all the deposition transcripts on August 11, 2015. All counsel of record immediately reviewed the transcripts, conferred regarding how to proceed with the case, and this motion to

dismiss was filed as soon as possible thereafter. Salima's refusal to produce his computer places Plaintiff at an enormous disadvantage.

### 3. Plaintiff Has A Good Explanation For Dismissal

Proceeding with this case is not economically justified. From experience doing it numerous times, Plaintiff knows with absolute certitude that proving fraud, suppression and spoliation is expensive.[2] This case simply is not worth it. First, Defendant's fraud has an international component. Finding Salima and compelling him to turn over the computer Defendant gave him would be very expensive. Indeed, assuming Salima even lives there; Plaintiff would have to retain counsel in Turkey to do so. Without the hard drive, Plaintiff simply cannot properly prepare for trial. As courts in peer-to-peer copyright cases have routinely explained, "[w]ere the contents of the drives available, this case would be easily judged on its merits. The Court finds that Plaintiffs' case was seriously prejudiced" without the hard drives. *Slep-Tone Entm't v. Granito*, 2014 WL 65297, at * 6 (D. Ariz. 2014). Second, Defendant does not have the assets or income necessary to pay a judgment and the attorneys' fees Plaintiff would spend on this case.

When, like here, a voluntary dismissal is supported by "a compelling practical purpose"—namely, the lawsuit is no longer economically justified, courts routinely allow dismissal. *See*, *e.g.*, *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 2007 WL 209923, at *5 (S.D. Tex. 2007) ("Lead Plaintiff explained, as a practical matter, that it is dismissing [Defendant] because in essence he is judgment-proof. It insists Congress never intended to force plaintiffs to prosecute claims against judgment-proof defendants."); *see also ACEquip, Ltd. v.*

---

[2] *See e.g., Malibu Media, LLC v. Tashiro*, 2015 WL 2371597, at *1 (S.D. Ind. 2015) (Defendant in BitTorrent infringement case destroyed evidence on his computer and lied about it); *Malibu Media, LLC v. John Does 1, 6, 13, 14*, (950 F. Supp. 779,788 (E.D. Pa. 2013) (same).

*Am. Eng'g Corp.*, 219 F.R.D. 44, 45 (D. Conn. 2003) (granting Plaintiff's request for voluntary dismissal where "Plaintiffs allege that they wish 'to avoid unnecessary cost and expense to all parties.'").

### 4.   Defendant Has Not Filed A Motion For Summary Judgment

Finally, the fourth factor weighs in Plaintiff's favor because Defendant has not filed a motion for summary judgment.

## B.   Courts Routinely Allow Dismissal Under Materially Indistinguishable Facts

Courts routinely allow dismissal in factually similar peer-to-peer copyright cases. *See Metro Media Entm't, LLC v. Steinruck,* 2014 WL 4268838, at *2 (D. Md. 2014) (granting plaintiff's motion to dismiss); *Malibu Media, LLC v. Shekoski*, 2015 WL 2353117, at *2 (E.D. Mich. 2015) (same, noting "[t]he Court finds that whether Plaintiff seeks dismissal to avoid expensive litigation, or because it no longer has a good faith belief that Defendant is the direct infringer, *Plaintiff has a justifiable reason to dismiss this lawsuit.*" ); *Elektra Entm't Grp., Inc. v. Perez,* 2006 WL 3063493, at *3 (D. Or. 2006) (same); *Interscope Records v. Leadbetter*, 2006 WL 3858397, at *1 (W.D. Wash. 2006) (same).

Indeed, in *Patrick Collins, Inc. v. Osburn*, a similar BitTorrent copyright infringement suit, the Fourth Circuit recently affirmed the district court's decision to grant the plaintiff's motion to dismiss. *See Patrick Collins, Inc. v. Osburn,* 595 F. App'x 243, 244 (4th Cir. 2015). Like here, the plaintiff in that case "'determined that the cost of going forward may not justify the damages that might be awarded[.]'" *Patrick Collins, Inc. v. Osburn*, 2014 WL 1682010, at *2 (D. Md. 2014) *aff'd,* 595 F. App'x 243 (4th Cir. 2015).  And, like here, the plaintiff did not over litigate the case; rather the defendant "cho[se] to pursue a particularly aggressive defense strategy[.]" *Id.* at *5. Further, in rejecting the defendant's argument that the plaintiff brought the

lawsuit for an improper purpose, the Court specifically acknowledged that the plaintiff had not acted in bad faith. "[I]it takes no great imagination to see how evidence that a file was downloaded by a certain IP address could support a plausible claim that the file was downloaded by the subscriber at that IP address. . . . Thus it was not improper for [plaintiff] to initiate and pursue this suit against [defendant]." *Id*. at *4.

### C. The Case Should Be Dismissed With Each Party Bearing Its Own Fees And Costs

Plaintiff respectfully requests this Court dismiss this case without prejudice, or in the alternative, with prejudice so long as each party bears its own costs and fees. To be clear, Plaintiff does *not* agree to the case being dismissed through any manner which would entitle Defendant to attorneys' fees.

1. <u>The Case Should Be Dismissed Without Prejudice So That Defendant Is Not Entitled To Prevailing Party Fees Under The Copyright Act</u>

Pursuant Section 505 of the Copyright Act, in its discretion, a court may "award reasonable attorney's fees to the prevailing party as part of the costs." "The Fourth Circuit has concluded that a voluntary dismissal without prejudice is insufficient to make a defendant a prevailing party because the plaintiff can refile the complaint." *Harris v. Lexjet Corp.,* 2010 WL 133599, at *1 (E.D. Va., 2010). As such, Plaintiff requests this Court dismiss this case *without prejudice* so that Defendant cannot be awarded prevailing party fees under the Copyright Act.

2. <u>The *Fogerty* Factors Weigh Against An Award Of Attorney's Fees</u>

While it is outside the scope of this paper, Plaintiff respectfully submits Defendant would *not* be entitled to prevailing party attorney's fees under a *Fogerty* analysis. Indeed, in analyzing an award of prevailing party attorney's fees, courts should consider "frivolousness, motivation, objective unreasonableness . . . and the need in particular circumstances to advance

considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535, at n.19 (1994).  Here, Plaintiff's suit was not frivolous and was brought for the sole purpose to stop longstanding and egregious copyright infringement.  Plaintiff did not delay filing its motion to dismiss, nor did it push the litigation past the point where it was reasonable to do so.  Last, Plaintiff's suit advanced the considerations of compensation and deterrence.  By bringing this suit, Plaintiff caused the infringement to stop, and therefore, accomplished one of the primary goals of the Copyright Act.  Awarding Defendant fees would only encourage people to allow infringement to occur through their internet and deter reasonable investigations aimed at stopping infringement.  Accordingly, while a full *Fogerty* analysis is not appropriate here, Defendant would not be entitled to prevailing party fees under it.

3.  The Dismissal Without Prejudice Should Not Be Conditioned On The Payment Of Fees

 "Rule 41(a)(2) . . . permits the district court to impose conditions on voluntary dismissal to obviate any prejudice to the defendants which may otherwise result from *dismissal without prejudice*." *Davis v. USX Corp.*, 819 F.2d 1270, 1273 (4th Cir. 1987).  Indeed, "[w]hen a dismissal is *without prejudice*, the Court may impose conditions, such as the movant's payment of the opposing party's fees and costs." *Patrick Collins, Inc.*, 2014 WL 1682010, at *4 (emphasis added).  "[D]istrict courts should 'impose only those conditions [that] actually will alleviate harm to the defendants.'" *RMD Concessions, L.L.C. v. Westfield Corp.*, 194 F.R.D. 241, 243 (E.D. Va. 2000).  Here, however, a dismissal would not prejudice Defendant.  Instead, it results in a windfall for Defendant who gets away free despite his infringement and the fees he cost Plaintiff.  Accordingly, a dismissal without prejudice should not be conditioned on the payment of Defendant's fees. *See In re Asberry*, 2006 WL 2548184, at *2 (Bankr. E.D. Va.

2006) (declining to condition a voluntary dismissal without prejudice on the payment of the defendant's attorney's fees).

    4.  <u>In The Alternative, This Case Should Be Dismissed With Prejudice</u>

In the alternative, Plaintiff respectfully requests this Court dismiss with prejudice and without the payment of Defendant's fees. "'[O]rdinarily, where a motion for voluntary dismissal is granted *with prejudice,* an award of attorneys' fees is not appropriate because there is no risk that the defendant can 'be called upon again to defend' and thus no risk of 'any duplication of expense.'" *Patrick Collins, Inc.*, 2014 WL 1682010, at *4 (quoting *Lawrence v. Fuld,* 32 F.R.D. 329, 331 (D. Md. 1963)) (emphasis added). Consistent with this reasoning, several courts in this Circuit have denied awarding defendants their attorney's fees when a plaintiff's copyright claim was dismissed *with prejudice* under Fed. R. Civ. P. 41 and when, like here, the plaintiff brought its copyright suit in good faith. *See*, *e.g.*, *id.* (granting plaintiff's motion to dismiss copyright claims *with prejudice* and denying fees to defendant, noting the plaintiff's suit was "not brought in bad faith."); *Metro Media Entm't, LLC*, 2014 WL 4268838, at *3 (same, noting "where a motion for voluntary dismissal is granted *with* prejudice, such as here, an award of attorneys' fees is not appropriate[.]").

As such, Plaintiff does not oppose dismissing this case with prejudice so long as Defendant is *not* awarded his attorney's fees; although Plaintiff prefers dismissing it without prejudice because there is a chance defendant will start infringing Plaintiff's works again. If so, Plaintiff may sue him. Amazingly, this happens. Plaintiff calls this particular brand of infringer "double dippers." Here, if Defendant double dips, it would be nice for Plaintiff to be able to sue him for his first helping. If he doesn't double dip, Plaintiff will not sue him for his first course again.

**D. Plaintiff Must Be Given The Opportunity To Withdraw This Motion Should The Court Condition Dismissal On The Payment of Defendant's Attorney's Fees**

Should the Court be inclined to condition dismissal upon the payment of Defendant's fees, Plaintiff must be afforded the opportunity to consider whether to withdraw this Motion and proceed with the litigation.  *See Davis v. USX Corp.*, 819 F.2d 1270, 1276 (4th Cir. 1987) ("[T]he district court abused its discretion by denying the motion for voluntary dismissal without prejudice because of the plaintiff's refusal to pay a portion of the defendant's attorneys' fees arising from the litigation of this action in federal court."); *Bell-Coker v. City of Lansing*, 2009 WL 80291, at *n.4 (W.D. Mich. 2009) ("Following imposition of any conditions, plaintiffs are thereafter afforded an opportunity to withdraw the request for voluntary dismissal"); *Andes v. Versant Corp.*, 788 F.2d 1033, 1037 (4th Cir. 1986) ("It upsets notions of fundamental fairness for a court, in response to a party's request for dismissal without prejudice, to grant the request by dismissing *with* prejudice, while failing to give the moving party notice of its inclination to impose this extreme remedy. The plaintiff here deserved such notice and an opportunity to proceed with the litigation of this case.").  Indeed, here, Plaintiff would much prefer to litigate than pay Defendant.

## IV.  CONCLUSION

For the foregoing reasons Plaintiff respectfully requests the Court grant Plaintiff's Motion to Dismiss Without Prejudice, or in the alternative, With Prejudice on the condition that each party pay its own fees and costs.  Again, Plaintiff does not agree to a dismissal through which it would have to pay Defendant's fees.

Dated:  August 25, 2015

Respectfully submitted,

By: /s/ William E. Tabot
William E. Tabot, Esq.
9248 Mosby Street
Manassas, VA 20110-5038
Tel: (703) 530-7075
Fax: (703) 530-9125
E-mail: wetabotesq@westlawfirm.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

Robert F. Powers, Esq.
McClanahan Powers, PLLC
1604 Spring Hill Road, Ste. 321
Vienna, VA 22182
E-mail: rpowers@mcplegal.com
*Attorney for Defendant*

By: /s/ William E. Tabot

## CERTIFICATE OF GOOD FAITH CONFERRAL

I hereby certify that counsel for Plaintiff has conferred counsel for Defendant in a good faith effort to resolve the issues, but Defendant opposes the requested relief.

By: /s/ William E. Tabot

17